Stephen Brent WHEELER,
Plaintiff–Appellee,

v.

JOHN DEERE COMPANY, a Delaware Corporation, Defendant–Appellant.

No. 86–1446.

United States Court of Appeals,
Tenth Circuit.

Dec. 2, 1988.

Joe A. Moore, Holladay, Tenn. (Jack B. Sellers and Jefferson D. Sellers of Jack B. Sellers Law Associates, Inc., Sapulpa, Okl., with him on the brief), for plaintiff-appellee.

Ronald M. Gott (Paul S. McCausland, with him on the brief), of Gott, Young & Bogle, P.A., Wichita, Kan., for defendant-appellant.

Before MOORE and BALDOCK, Circuit Judges, and PARKER, District Judge.[*]

BALDOCK, Circuit Judge.

Plaintiff-appellee, Stephen Wheeler (Wheeler), lost his right arm when it became entangled in the vertical unloading auger of a John Deere Titan series model 7720 combine. He brought this diversity case under a strict products liability theory alleging the combine was unreasonably dangerous. Applying Kansas law to the evidence, a jury awarded Wheeler $2.3 million. Defendant-appellant, John Deere Company (Deere), appeals from the judgment on the verdict. Deere asserts the district court improperly (1) admitted evidence of other accidents involving the Titan series combine, (2) admitted evidence of subsequent design changes in the machine, (3) charged the jury on the elements necessary to sustain the cause of action, and (4) denied Deere's motion for a directed verdict at the close of Wheeler's case-in-chief. Our jurisdiction arises under 28 U.S.C. § 1291. We reverse and remand for a new trial.

### Background

In May 1981, Wheeler, then 21 years old, obtained employment as a truck driver with the Fenton Custom Combining Crew of Bristow, Oklahoma. Wheeler's employer, Larry Fenton, had been engaged in custom harvesting since 1973. Each spring, Fenton's crew departed with combines and grain trucks, and followed the wheat harvest through Oklahoma to Montana.

Prior to September 14, 1981, Wheeler was not involved with the actual operation and machine maintenance of the combines. Aside from maintaining and driving the trucks, his duties were limited to fueling the combines and washing their windows. On September 14, 1981, the crew had just returned from the wheat harvest and was in Leoti, Kansas, preparing the 7720 combine to harvest pinto beans. As part of the preparation, it was necessary to clean caked wheat and chaff from the combine's grain tank, vertical auger and sump.

During the cutting process, wheat particles inevitably gathered moisture and clogged the machine's unloading system. Once the grain was cut, two horizontal augers stretching across the bottom of the tank moved it into a sump. The vertical auger then lifted the grain to a horizontal unloading spout above the tank. The spout pivoted and delivered the grain into a truck. The augers were engaged by shifting a lever on the floor of the cab.

According to Fenton, the vertical auger on his 7720 combine was unable to completely clean the sump. Although after cutting he regularly attempted to clear the machine by continuing to run the unloading system, some accumulation remained. A cleanout door on the left side of the combine to the rear of the auger provided the only other means by which to rid the machine of excess wheat and chaff.

After checking the trucks on the morning of September 14, Wheeler approached the combine. Fenton had removed the cleanout door. Wheeler observed Fenton reaching inside the opening about eight inches and digging clumped wheat from the vertical auger with his hand. A combine operator for the crew, Steve Milner, was measuring the machines's hydraulic fluid.

Subsequent to loosening the wheat, Fenton directed Milner to start the engine and engage the auger in an attempt to dislodge and eject the remaining buildup. Fenton and Wheeler stood back. When the clogging persisted, Fenton climbed into the tank to kick the wheat down into the sump. He instructed Wheeler to then dig the grain from the auger and sump if the unloading system could not throw it out. Milner had disengaged the auger, but kept the engine running. Without warning Wheeler, Fenton told Milner who was on the landing outside the cab to again engage the auger, which he did. Both Fenton and

[*] The Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

Milner were unaware that Wheeler at that moment had his arm extended into the auger and was removing wheat from it. Wheeler's right hand and arm were immediately drawn into the auger housing causing severe injury. As a result of the injury, a doctor amputated his entire arm.

Before trial, Deere stipulated that it was feasible to design the vertical auger to include two smaller cleanout doors which would have prevented Wheeler's injury, rather than the one large door which allowed him to place his arm inside the machine. The parties also agreed that at the time of the mishap no caution or warning was present next to the vertical auger cleanout door on the 7720 combine. Instead, a caution decal was located approximately twenty-six inches behind the door and seventy inches above the ground. While the warning advised the operator to "[k]eep all shields in place," and "[d]isengage and shut off all engine and/or motor power before servicing or unclogging [the] machine," trial testimony indicated that it was impossible to completely unclog the combine without removing the cleanout door and engaging the vertical auger.

Answering interrogatories, the jury assessed Wheeler's total damages at $3.1 million. It attributed 75% of the fault to Deere and 25% of the fault to Wheeler's employer, Larry Fenton, resulting in a $2.3 million verdict against the defendant Deere.

## I.

Deere first challenges certain evidentiary rulings of the district court. At trial, the judge permitted the live testimony of five witnesses who lost portions of their right arms while clearing the augers on Titan series combines. The judge also allowed Wheeler to impeach Deere's expert with evidence of all twenty-four accidents involving the vertical auger on Deere combines, and admitted exhibits reflecting design changes in the 7720 combine following Wheeler's accident. Deere assigns error to each of these decisions.

Fed.R.Evid. 103 instructs that unless a substantial right of the objecting party is affected, any error in the admission or exclusion of evidence is harmless. *Motive Parts Warehouse v. Facet Enter.*, 774 F.2d 380, 396 (10th Cir.1985). Consequently, we review the district court's evidentiary rulings by considering the record as a whole. *Herndon v. Seven Bar Flying Serv., Inc.*, 716 F.2d 1322, 1326 (10th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). The onus of establishing reversible error rests with the complaining party. *K–B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1156 (10th Cir. 1985).

### A.

Both federal and Kansas law permit the introduction of substantially similar accidents in strict products liability actions to demonstrate "notice, the existence of a defect, or to refute testimony given by a defense witness that a given product was designed without safety hazards." *Ponder v. Warren Tool Corp.*, 834 F.2d 1553, 1560 (10th Cir.1987). Before introducing such evidence, the party seeking its admission must show the circumstances surrounding the other accidents were substantially similar to the accident involved in the present case. *Rexrode v. American Laundry Press Co.*, 674 F.2d 826, 829 n. 9 (10th Cir.), *cert. denied*, 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117 (1982); *Julander v. Ford Motor Co.*, 488 F.2d 839, 846–47 (10th Cir. 1973). While this foundation may be laid in the presence of the jury, the preferable approach is for the trial judge to hold a hearing outside its presence. *Rexrode*, 674 F.2d at 830.

Whether accidents are substantially similar depends largely upon the theory of the case: "Differences in the nature of the defect alleged may affect a determination whether the accidents are substantially similar.... How substantial the similarity must be is in part a function of the proponent's theory of proof." *Ponder*, 834 F.2d at 1560. Evidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury. The re-

quirement is relaxed, however, when the evidence of other accidents is submitted to prove notice or awareness of the potential defect. *Exum v. General Elec. Co.*, 819 F.2d 1158, 1162–63 (D.C.Cir.1987). Any differences in the accidents not affecting a finding of substantial similarity go to the weight of the evidence. *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir.1986).

In this case, Wheeler obtained through discovery a list of twenty-four individuals injured by vertical unloading augers on Titan series combines. As part of his case-in-chief, Wheeler sought to present the live testimony of ten of those individuals to demonstrate the combine's dangerous propensities. The trial judge permitted Wheeler to lay the foundation for five of the witnesses in chambers, but refused to hear the remaining five because of the cumulative nature of their proposed testimony. Prior to the questioning, the judge stated the criteria he felt necessary to establish the requisite similarity:

> Let me say, only criteria I'm going to ask is ... that he would be identified as one who sustained an injury and that he can demonstrate the nature of it; that injury occurred while he had his arm extended in the open auger, that is, the lower vertical auger or clean-out door; that he did so in the cleaning process and that while he was in that condition or position, the PTO [power take-off lever] was unexpectedly engaged, period. That's all I need to hear. That's all I think the jury needs to here in that that's the only thing that is of interest here as you would attempt to establish similar claims, which, in my view then, would be admissible as corroborative that such injuries will occur as long as the defendant's product operates as it's presently designed.

Rec. vol. II at 399–400. The trial judge viewed Deere's proposed questions pertaining to the type and location of warning decals, the circumstances under which the witness and others were working around the combines at the time of the respective mishaps, and the outcome of any claims against Deere, as totally irrelevant to the finding of substantial similarity. Rec. vol. II at 401–23.

■ Perhaps the judge's view was unduly restrictive. His refusal to permit questions as to the type and location of warning decals may have been improper. Such inquiry certainly bears upon the dangerous condition of the various combines. But we are unable to state that his ruling constitutes an abuse of discretion. *See Ponder*, 834 F.2d at 1560. To be admissible, other accidents need only be substantially similar to the accident at issue, not exactly the same. Wheeler claimed the 7720 combine was unreasonably dangerous because of a defective design. After concluding that the five witnesses were injured in a manner similar to Wheeler, the trial judge rightly permitted them to testify because their accidents were probative of the alleged defect's existence.

■ We do not believe, despite Deere's contrary assertions, that the victims' live testimony before the jury was unduly prejudicial. Under Fed.R.Evid. 403, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." We have stated on numerous occasions that "the exclusion of relevant evidence under Rule 403 is an extraordinary remedy to be used sparingly. The decision to exclude (or admit) evidence under this rule is within the sound discretion of the trial court, and will not be reversed by this court absent a clear abuse of discretion." *Romine v. Parman*, 831 F.2d 944, 945 (10th Cir.1987) (quoting *K–B Trucking*, 763 F.2d at 1155); *see also United States v. Glover*, 846 F.2d 339, 343 (6th Cir.1988) ("if judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal").

Each witness admittedly had a limb amputated. Nevertheless, the favored method of presenting evidence of other accidents is through the testimony of those familiar with such accidents. *Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1534 n. 4 (10th Cir.1986). Most evidence may lead to prejudicial conclusions.

But rule 403 prohibits only "unfair" prejudice. *United States v. Williams*, 816 F.2d 1527, 1532 (11th Cir.1987). "Proof of other accidents, when offered in the form of testimony by persons who have had sudden or traumatic experiences, can be particularly forceful and effective. It will be entirely proper in such cases to receive not only testimony describing the physical facts, but also describing the experience of the witness...." D. Louisell & C. Mueller, *Federal Evidence* § 98 at 722 (1977). Consequently, the trial judge did not err in allowing the live testimony of the five victims.

■ Wheeler's use of other accidents to impeach Deere's expert, however, constitutes error. At trial, the expert stated on direct examination that Deere's tests and analyses of the Titan series combine revealed no safety hazards surrounding the vertical auger cleanout door. Rec. vol. IV at 43. On cross examination, Wheeler inquired whether the expert was aware of the twenty-four accidents involving the cleanout door uncovered during discovery. Rec. vol. IV at 64–75. The first accident used to impeach the expert concerned a mechanic at the Evergreen Implement Company. The trial judge had made no finding regarding similarity. Deere promptly objected to the introduction of this first accident, asserting that it was not similar to Wheeler's mishap because it was a one-party accident involving belt slippage on the machine.[1] The trial judge overruled the objection:

> Well, there was a document number seven [list of other accidents] ... and I said reserve it for cross and he's fair cross to anyone who steps on and says, "I'm a design engineer." He's going to say that he doesn't know anything. I think the plaintiff is at liberty to take the list to them. We will see what he knows about this lower auger.... I don't know

what happened in each of them, but I did know what happened in ten of them. Five of them testified and you've got a list of twenty-one [sic] of them. The first time somebody steps up and says, "I'm a design engineer and I know something about this project" we'll run a test of his understanding at a similar time. If they are not similar you can clarify it but I think it's fair game for cross.

Rec. vol. IV at 65–67.

■ As earlier explained, evidence of other accidents is admissible to impeach testimony that a product was designed without safety hazards only if the proponent first shows that the accidents were substantially similar to the accident presently at issue. The mechanic's accident about which Wheeler first questioned the expert was not one of those ten accidents previously found by the trial court to be sufficiently similar. Rather, the trial judge had yet to make a finding in that regard. Therefore, its admission to impeach the expert constituted error and, in effect, improperly shifted the burden of proving dissimilarity to Deere on redirect examination. *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1332 (8th Cir.1985). The trial judge acknowledged the shifting of the burden when he told Deere "[i]f they are not similar you can clarify it." Rec. vol. IV at 67. Moreover, the trial judge compounded the error when he allowed Wheeler to introduce, in addition to the mechanic's accident, twenty-three more accidents, thirteen about which the court knew nothing: "I don't know what happened in each of them, but I did know what happened in ten of them." Rec. vol. IV at 66. This error cannot be labeled as harmless.

## B.

Aside from the admission of other accidents into evidence, Deere objected to the

---

**1.** On appeal, Deere also argues that Wheeler's use of other accidents to impeach its expert was beyond the scope of direct examination. To preserve this alleged error for appeal, however, it was necessary, in the absence of plain error, for Deere to make a timely and *proper* objection. Fed.R.Evid. 103(a)(1) directs that a party objecting to the admission of evidence must base the objection on specific grounds. The

specific grounds for reversal of an evidentiary ruling on appeal must be the same as that raised at trial. *United States v. Taylor*, 800 F.2d 1012, 1017 (10th Cir.1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987). Because Deere did not object on the ground that the impeachment with other accidents was beyond the scope of direct examination, and we find no plain error, the point is waived.

admission of certain exhibits reflecting design changes incorporated into the vertical auger cleanout door after Wheeler's mishap. At the beginning of trial, the judge read to the jury the parties' stipulation concerning the feasibility of an alternative design:

> They have agreed that in 1979 when [the] John Deere Model 7720 combine was manufactured, it was technologically and economically feasible to design the vertical auger of the combine by incorporating a smaller rear door clean-out door, trimming the auger flighting and adding a second clean-out door on the front of the auger sump. Technological and economic feasibility of using a clean-out door reduced in size with the second door on the front of the auger sump housing would have prevented this accident.

Rec. vol. I at 143. In a motion *in limine,* rec. vol. I at doc. 45, and again in a pretrial conference, rec. vol. I at 54, 62–64, Deere contended that the stipulation made any evidence of subsequent design changes in the combine inadmissible. The trial judge disagreed. We agree with Deere on this point.

Because the question of whether to permit evidence of subsequent remedial measures in strict products liability actions depends upon policy considerations rather than relevancy, it is governed by state law in diversity actions. *Moe v. Avions Marcel Dassault–Breguet Aviation,* 727 F.2d 917, 932 (10th Cir.), *cert. denied,* 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984). At the time of the accident in question, Kan. Stat.Ann. § 60–451 (1983) stated: "When after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." In *Siruta v. Hesston Corp.,* 232 Kan. 654, 659 P.2d 799, 808–809 (1983), a strict products liability action, the Kansas

Supreme Court held that where the defendant denies the feasibility of a design change, subsequent remedial measures are admissible to show feasibility:

> Logically, when defendant manufacturer's experts have testified that a particular design change is not feasible, it would seem that evidence of the incorporation of plaintiff's suggested design change in a later product of the defendant manufacturer would be highly relevant and admissible to prove feasibility.... The defendant's expert ... testified that such a design was not feasible. Under the circumstances, the trial court did not err in admitting evidence of the defendant's ... subsequent design changes....

*Siruta* adheres to the general proposition that, unless controverted by the defendant, evidence of subsequent design changes to illustrate feasibility is inadmissible.[2] This result rests on the policy of encouraging manufacturers to make their products as safe as possible free from the fear that their remedial measures will be used against them at trial. This policy is consistent with Fed.R.Evid. 407.

In this case, Deere objected to the admission of Wheeler's exhibit 8a, a photograph of a Titan series combine with the modified design and warning label offered to illustrate how the new design would operate, and exhibits 4a–e, Deere safety committee minutes reflecting Deere's knowledge of the machine's hazardous nature and describing activities and proposals prior to the change. Rec. vol. I at 147–49, 153–54. Notwithstanding Deere's objection and stipulation, however, the trial judge permitted Wheeler to introduce the exhibits into evidence and refer to them before the jury. Rec. vol. I at 152–53, 165.

Under *Siruta,* the admission of exhibit 8a is reversible error. This error was compounded by allowing Wheeler to remark on the feasibility of the alternative design throughout the trial. *See, e.g.,* rec. vol. II at 290–96, 441. The prerequisite

---

**2.** In 1986, the Kansas legislature codified this rule at Kan.Stat.Ann. § 60–3307 (Supp.1987) (evidence of subsequent measures are admissible only "if offered to impeach a witness for the manufacturer or seller of a product who has expressly denied the feasibility of such a measure").

that feasibility must be controverted before evidence of subsequent remedial measures may be presented to the jury demanded the exclusion of exhibit 8a. Deere laid the groundwork for the exhibit's exclusion by stipulating to feasibility. The stipulation was the *only* evidence the jury should have heard relating to the design changes in the 7720 combine. *See* Rules of Evidence, 56 F.R.D. 183, 225–26 (1973) (advisory committee's notes to Fed.R.Evid. 407).

The question of the admissibility of exhibits 4a–e is more troublesome. At trial, Wheeler offered the safety committee minutes to show Deere's knowledge of the 7720 combine's dangerous design. Rec. vol. I at 165. Deere objected to the minutes' introduction on the basis that they referred to the proposed modification of the cleanout door and warning decal, as well as to accidents other than Wheeler's. Rec. vol. I at 154.

In Kansas, the imposition of liability upon a manufacturer for inadequately warning a consumer or user regarding the dangers associated with its product is dependent upon the manufacturer's actual or constructive knowledge of the risk: "[T]he adequacy of a warning is ... judged under a reasonableness standard—even if the claim is made under the rubric of a strict products liability defect." *Johnson v. American Cyanamid Co.*, 239 Kan. 279, 718 P.2d 1318, 1324–25 (1986). Consequently, the trial judge properly admitted those portions of exhibits 4a, b & d which refer to Deere's awareness of a possible problem and the need for a new warning decal placed directly next to the vertical auger cleanout door. This evidence is relevant to the issue of whether the combine's warning as it existed at the time of Wheeler's accident was adequate.[3]

The trial judge erred, however, in admitting exhibits 4c & e into evidence. Exhibit 4c discusses a proposed design change in the vertical auger cleanout door.

Thus, it weighs directly upon the feasibility of Deere's remedial measures and is inadmissible as a result of the stipulation. Like exhibits 4a, b & d, exhibit 4c may illustrate Deere's knowledge of a dangerous condition. But unlike the warning issue, knowledge, according to the Kansas Supreme Court, is irrelevant when the focus turns to the product itself: "In strict liability actions ... we focus not on the reasonableness of a defendant's conduct but on the product, and we ... ignore the question of a manufacturer's actual or constructive knowledge of risk (as in a 'consumer expectations' design defect case)...." *Johnson*, 718 P.2d at 1324.

Finally, exhibit 4e does not refer to any proposed change in the warning decal or cleanout door, but instead refers to two accidents involving the Titan series combine and additional material irrelevant to this case. As explained in part I.A. of our analysis, the evidence of other accidents is inadmissible where the trial judge, as here, has failed to make a finding of substantial similarity. Therefore, the admission of exhibit 4e was also error.

## II.

Next, we turn to Deere's complaints pertaining to the jury instructions. Like the standard of review for evidentiary rulings, an error in jury instructions requires reversal "only if the error is determined to have been prejudicial, based on a review of the record as a whole." *Durflinger v. Artiles*, 727 F.2d 888, 895 (10th Cir.1984). In considering the instructions, we "consider all the jury heard, and from the standpoint of the jury, decide not whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duties to determine these issues." *Patty Precisions Prod. Co. v. Brown & Sharpe Mfg. Co.*, 846 F.2d 1247, 1252 (10th Cir.1988). The instructions as a

---

**3.** As part of its objection, Deere correctly noted that much of the information contained in the safety committee minutes was totally irrelevant to the issues in the present case. Rec. vol. I at 154. Because the information may confuse the jury, on remand the trial judge should require Wheeler to redact the impertinent material before permitting him to introduce exhibits 4a, b & d into evidence.

whole need only convey a correct statement of the applicable law. *Furr v. AT & T Tech., Inc.*, 824 F.2d 1537, 1549 (10th Cir. 1987). In this instance, Deere challenges jury instructions twelve, seventeen and eighteen.[4] We discuss each *seriatim* and conclude that the instructions adequately reflect Kansas law.

### A.

Deere first asserts that instruction eighteen is an incorrect statement of Kansas law. That instruction states:

Simply said, each actor's fault, if any, is measured from his respective duty of care. The manufacturer has a strict duty of care in the design and production, including a duty to guard against injury to ordinary and even negligent consumers. The consumer has a lower duty of care than the manufacturer but still has an ordinary duty of care.

Rec. vol. I at doc. 62. Relying on *Prentice v. Acme Machine & Supply Co., Inc.*, 226 Kan. 406, 601 P.2d 1093, 1095 (1979), Deere concludes that because Wheeler chose to proceed only under a strict products liability theory, instructions which present negligence concepts to the jury are improper. *Prentice* admittedly supports Deere's position. Strict products liability in its purest form focuses exclusively on the product rather than the manufacturer's conduct. And if that decision were the sole statement on Kansas strict products liability

law, we would indeed follow it. But much has changed since 1979.

In *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788, 798 (1980), the Kansas Supreme Court held that the concept of comparative fault applied to strict liability claims. Subsequently, in *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 634 P.2d 1127, 1131 (1981), the court held that "strict liability in tort does have a fault basis, therefore subjecting it to comparison with other fault concepts." These decisions were the bases for our analysis in *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 455 (10th Cir.1982), wherein we noted that although difficult to rationalize, "it appears that Kansas in effect treats each kind of traditional tort liability as a departure from a defined duty whether that departure is in the nature of breach of warranty, routine neglect, failure to warn, or placing a defective and unreasonably dangerous product in the stream of commerce." Thereafter, in *Prince v. Leesona Corp.*, 720 F.2d 1166, 1171 n. 9 (10th Cir.1983), a panel of this court, again interpreting Kansas law, delivered the footnote which instruction eighteen follows nearly verbatim.[5]

With the application of comparative negligence to strict liability, Kansas has decided to permit the jury to determine each actor's relative degree of fault. Before apportioning fault, however, it is necessary to define the respective duties. Thus, until the Kansas courts tell us other-

---

**4.** In its appellate brief, Deere also briefly mentions instruction nine which describes the theory behind the law of strict products liability. Although Deere now claims that the instruction was prejudicial, at trial defendant merely indicated "it's unnecessary." Rec. vol. III at 115. Fed.R.Civ.P. 51 provides that a party objecting to an instruction must state "distinctly the matter objected to and the grounds of the objection." Because instruction nine does not constitute patently prejudicial error and Deere's objection was general in nature, we decline to further review it. *Moe*, 727 F.2d at 924.

**5.** Our countenance of instruction eighteen in this instance is not an endorsement of the use of appellate court dicta as jury instructions. The district court should cautiously and sparingly charge the jury with such language. As the Fifth Circuit aptly noted:

[W]hat an appellate Judge ... says for the Court ... does not mean that such language may, or should, be used as a jury charge. It all depends on whether the words presumably chosen by one artificer [appellate judge] for others of presumed like skill [trial judge] communicate the applicable legal principles to those [jurors] attending, as it were, their-once-in-a-lifetime-law-school-for-a-day. *United States Lines Co. v. Williams*, 365 F.2d 332, 335 (5th Cir.1966).

Because Kansas courts have not described the differing legal duties involved in strict products liability actions as comparatively "lower" or "higher," on remand the district court should simply define the actors' respective duties without stating that the duties differ in degree.

wise, we cannot conclude that an instruction attempting to define those duties in a strict liability action is error. Moreover, we cannot consider instruction eighteen in a vacuum. The instructions considered as a whole properly outline the elements necessary to establish Deere's liability under Kansas strict products liability law.[6]

### B.

Deere next takes issue with instruction twelve concerning its duty to warn. That instruction reads:

> For a warning to be adequate, the content and placement of the warning must be of such a nature as to be comprehensible to the average user and convey a fair indication of the nature and extent of the danger to the mind of a user. If the content and placement of the warning unreasonably minimizes the known dangers which exist, or gives false assurances to the consumer, then the warning is probably inadequate.

Rec. vol. I at doc. 62. Deere argues that the second sentence of the instruction is not supported by the evidence or Kansas law. Instead, defendant claims entitlement to an instruction consistent with Restatement (Second) of Torts § 402A comment j (1965). Comment j states that a manufacturer is not required to warn where a product's dangers are generally known and recognized. Additionally, where an adequate warning is given, the manufacturer may assume it will be followed.

Once again, however, Deere fails to read the instructions in their entirety. Instruction eleven specifically instructs the jury that "a product is not 'unreasonably dangerous' when its degree of danger is obvious and generally known or recognized; nor is it 'unreasonably dangerous' if the manufacturer has given adequate warnings ... that sufficiently alert the user to the risk of danger in using the product." Rec. vol. I at doc. 62. Similarly,

instruction fifteen informs the jury of the user's "duty to use a product in accordance with adequate instructions and warnings." Rec. vol. I at doc. 62. These two instructions read together sufficiently comply with Kansas law on the duty to warn. See Brooks v. Dietz, 218 Kan. 698, 545 P.2d 1104, 1108 (1976) (adoption of § 402A).

Likewise, we believe that the evidence does support the second sentence of instruction twelve. Deere stipulated before trial that at the time of Wheeler's accident, the 7720 combine did not have a warning decal next to the vertical auger cleanout door, but had one further back on the machine. Rec. vol. I at 142. Wheeler testified that he was not aware of the warning prior to his injury. Rec. vol. I at 208. He and Fenton also testified that it was impossible to comply with the warning and fully clean the auger. Rec. vol. I at 209, 268. There was certainly sufficient evidence in the record for the jury to conclude that Deere's warning minimized the dangers associated with the vertical auger and gave false assurances.

### C.

Third, Deere objects to the district court's refusal to instruct the jury as to Steve Milner's duty of care and to include him on the verdict form for comparative fault purposes. Under the Kansas Workmen's Compensation Act, Kan.Stat.Ann. § 44–501(b) (1986), both Fenton and Milner were immune from suit. The Kansas Supreme Court has held, however, that "[u]nder the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible." Albertson, 634 P.2d at 1132. Accordingly, after defining Fenton's duty of care to Wheeler in instructions fourteen and sixteen, the trial judge presented instruction seventeen to the jury:

---

6. Deere also contends that even assuming its conduct is relevant under Kansas law, a manufacturer certainly has no duty to protect "even negligent consumers" against injury. We disagree. Despite the adoption of comparative negligence, a manufacturer may still be liable for a user's foreseeable misuse in Kansas, and instruction ten in this case so informed the jury. Under Kansas law, the term "misuse" may include negligence. See Siruta, 659 P.2d at 822 (Schroeder, C.J., dissenting).

"As it may apply in this case, the acts or omissions, if any, of Fenton's employee, Steve Milner, in causing or contributing to plaintiff's injuries, should be attributed to Mr. Fenton when determining whether Fenton was negligent." Rec. vol. I at doc. 62.

Kansas law permits the aggregation of other individuals' fault in calculating the percentage of fault attributable to a plaintiff. *Prince*, 720 F.2d at 1168 n. 2. Whether the jury is allowed to aggregate fault and assign it to one person prior to delivering its verdict, or list each actor's respective percentage of culpability on a verdict form and await the trial judge's addition makes no difference to the suit's outcome. In this case, the trial judge properly instructed the jury on the law of negligence to be applied to the conduct of Fenton and Milner. We cannot assume that simply because only Fenton was listed on the verdict form the jury shirked its responsibility to consider Milner's fault and attribute it to Fenton prior to reaching a verdict.

### III.

Lastly, Deere contends that the trial judge erred in denying its motion for a directed verdict at the close of Wheeler's case-in-chief. Deere claims it is not liable as a matter of law because the combine possessed an adequate warning and was not more dangerous than would be expected by the ordinary consumer. This point is thin. Wheeler produced evidence sufficient to withstand Deere's motion. A directed verdict pursuant to Fed.R.Civ.P. 50 is proper "only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." *J.I. Case Credit Corp. v. Crites*, 851 F.2d 309, 311 (10th Cir.1988). That certainly is not the case here.

Before reaching the merits of this final issue, we note the appellate record fails to show that Deere renewed its motion for a directed verdict at the close of all the evidence, or moved for a judgment notwithstanding the verdict at the end of trial. Consequently, Deere has probably waived its right to challenge the sufficiency of the evidence on appeal: "[A] defendant's motion for a directed verdict made at the close of the plaintiff's evidence is deemed waived if not renewed at the close of all the evidence; failure to renew that motion bars consideration of a later motion for judgment n.o.v." *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1455 (10th Cir.1987). Nevertheless, for the benefit of the parties and district court on retrial, we shall reach the merits.

In *Lester v. Magic Chef, Inc.*, 230 Kan. 643, 641 P.2d 353, 361 (1982), the Kansas Supreme Court adopted the "consumer expectations" test in strict liability actions as enunciated in comment i of § 402A of the Restatement (Second) of Torts: "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." In this instance, Wheeler's expert testified that the 7720 series combine was in his opinion more dangerous than the ordinary user would expect. Rec. vol. II at 304–05. Moreover, Deere's expert stated that it was reasonable for a person to clean the vertical auger while the combine's engine was running. Rec. vol. IV at 83–84. With regard to the adequacy of the warning, we have already noted that Deere stipulated to the absence of a warning directly next to the cleanout door, and that the warning which was present was impossible to comply with while cleaning the machine. Rec. vol. I at 142, 208–10, 267–68. In view of this evidence, it is crystal clear that the trial judge did not err in refusing to take this case from the jury, and we therefore sustain him on the denial of the directed verdict motion.

### IV.

In sum, we conclude that the trial judge properly (1) permitted the live testimony of five individuals injured in accidents similar to Wheeler's mishap, (2) denied Deere's motion for a directed verdict based on the insufficiency of the evidence, and (3) in-

structed the jury on the elements of Kansas strict liability law. The trial judge erred, however, in allowing Wheeler to (1) impeach Deere's expert with other accidents which the judge had not previously found to be substantially similar, and (2) introduce exhibits reflecting Deere's subsequent design changes after Deere had stipulated to their feasibility. Accordingly, we reverse the judgment of the district court and remand for a new trial.

REVERSED AND REMANDED.