974 F.2d 1346
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Charles WINTERS, Individually; Sherry Winters,
Individually; Charles Winters, and Sherry Winters as
natural parents and next friends of Charles Bruce Winters, a
minor; Charles Winters, and Sherry Winters as natural
parents and next friends of Keleigh Winters, a minor
Plaintiffs/Appellees/Cross-Appellants,
v.
UNION TEXAS PETROLEUM CORPORATION, a Delaware corporation,
Defendant/Appellant/Cross-Appellee.
 Nos. 90-2269, 90-2285.
 United States Court of Appeals, Tenth Circuit.
 Aug. 17, 1992.
 
 Before LOGAN, SETH, and SNEED,* Circuit Judges.
 ORDER AND JUDGMENT**
 SNEED, Circuit Judge.
 
 
 1
 These appeals arise from a jury award of compensatory and punitive damages against Union Texas Petroleum Corporation in favor of the Winters family based on Union Texas' negligent drilling of a natural gas well. The drilling caused contamination of the Winters' water well, with consequent property damage to the Winters' homestead and personal injuries to the Winters. Union Texas appeals the jury verdict on a number of grounds and specifically appeals the award of punitive damages. The Winters appeal the sole issue whether the court erred in refusing to award prejudgment interest. We vacate that portion of the district court's order denying prejudgment interest, and remand for a determination of whether such interest is proper. We affirm the district court's decision in all other respects.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 In 1979 Charles and Sherry Winters and their children moved into a house Charles and Sherry built on a five-acre spread in the Animas Valley of northwestern New Mexico. The two Winters children, Charles Bruce and Keleigh, grew up on the property. Mr. Winters ran horses on the land for his children, who participated in 4-H and rodeo. He also raised and trained racehorses there.
 
 
 3
 A well, drilled in 1977, supplied the property with water. The well was deepened in 1982, and continued to produce good drinking water after being deepened. In April 1985, however, the water quality suffered a drastic change. For two weeks it ran hot, and then developed a foul odor and film. Tests confirmed that dangerous levels of methane, ethane, and propane gas were present in the well water. Clothes turned gray in the wash, appliances were ruined, and the pipes began to corrode. The downstairs portion of the house was flooded when hot water pipes ruptured due to valve corrosion. The contaminated well water was unfit to drink, and the entire family suffered health and emotional problems as a result. Eventually the family moved out and their horses had to be sold.
 
 
 4
 Because of the water problems, the Winters' property is essentially worthless and they cannot sell it. In late 1987, Mr. and Mrs. Winters were forced to move back into the house to enable them to send their children to school. They subsist by having their water trucked in at some expense. The foul odor has persisted, as have their health problems.
 
 
 5
 On March 19, 1987, the Winters filed suit against Union Texas. Their complaint alleged that Union Texas negligently drilled a natural gas well, the Payne 8, which was located on a bluff overlooking the Winters' property, in such a manner as to cause their injuries and property damage. At a jury trial held in February 1990, the Winters introduced expert testimony and other evidence tending to prove that the Payne 8 was a "problem well," that the Payne 8 had been brought into production without due regard for the environment, and that leakage from the Payne 8 was the source of the Winters' water contamination. At the close of evidence, Union Texas moved for a directed verdict on the issue of punitive damages; the court denied the motion. The jury found Union Texas negligent, and awarded compensatory and punitive damages totalling $486,830.
 
 
 6
 Following the jury verdict, the Winters moved for an award of prejudgment interest, and Union Texas moved for remittitur or, alternatively, a new trial. The court denied both parties' motions. This appeal and cross-appeal followed.
 
 II.
 JURISDICTION AND STANDARDS OF REVIEW
 
 7
 We have jurisdiction pursuant to 28 U.S.C. § 1291. The standards of review are numerous and vary with the issue involved. For example, abuse of discretion is the proper standard when the issues are the correctness of a trial court's decision to qualify an expert witness, Firestone Tire and Rubber Co. v. Pearson, 769 F.2d 1471, 1482 (10th Cir.1985), and its decision whether to grant prejudgment interest, see Strickland v. Roosevelt County Rural Elec. Coop., 99 N.M. 335, 657 P.2d 1184, 1193 (N.M.Ct.App.1982), cert. denied, 99 N.M. 358, 658 P.2d 433 (N.M.), and cert. denied, 463 U.S. 1209 (1983). Various adjectives modify this standard in other situations. It is "clear" abuse of discretion when a measuring a court's decision to admit relevant evidence, C.A. Assoc. v. Dow Chem. Co., 918 F.2d 1485, 1489 (10th Cir.1990); "manifest" when refusing to grant a motion for new trial based on insufficiency of the evidence, Royal College Shop, Inc. v. Northern Ins. Co. of N.Y., 895 F.2d 670 (10th Cir.1990); and "gross" in granting or denying a remittitur, see Holmes v. Wack, 464 F.2d 86, 89 (10th Cir.1972).
 
 
 8
 We review the jury instructions to determine whether "[t]he instructions as a whole ... convey a correct statement of the applicable law." Wheeler v. John Deere Co., 862 F.2d 1404, 1411-12 (10th Cir.1988). Reversal is required only if an error in jury instructions "is determined to have been prejudicial, based on a review of the record as a whole." Id. at 1411. Finally, we review the trial court's denial of a motion for directed verdict to determine whether the court's evaluation of the evidence was clearly erroneous. See Brown v. Reardon, 770 F.2d 896, 903 (10th Cir.1985).
 
 III.
 DISCUSSION
 A. Scope of Union Texas' Appeal
 
 9
 As a threshold matter, we must consider what issues Union Texas is entitled to have us review. Its first notice of appeal, on December 5, 1990, raised only the issue of punitive damages. On December 6, 1990, however, Union Texas amended its notice of appeal to cover alleged errors in the general verdict. The Winters insist that the December 6 filing was ineffective because Union Texas did not seek leave to amend from the district court. As a consequence, this court should hear Union Texas' appeal only as it relates to punitive damages, and we should not reach Union Texas' appeal of the general verdict.
 
 
 10
 We reject the Winters' argument. December 6 was the last day on which an appeal would have been timely as a matter of right under Fed.R.App.P. 4(a)(1), 4(a)(4). Nothing in the Rules of Appellate Procedure precludes an amended notice of appeal from being accepted as of right so long as it meets the Rule 4(a)(1) and 4(a)(4) time guidelines. "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate...." Fed.R.App.P. 3(a). The Winters' reliance on Spound v. Mohasco Indus., Inc., 534 F.2d 404, 410-11 (1st Cir.), cert. denied, 429 U.S. 886 (1976), is misplaced. That case deals with Rule 4(a)(5) relief from the Rule 4(a)(1) thirty-day time limit and has no application here.
 
 
 11
 We now turn to the issues Union Texas fairly raises by this appeal.
 
 B. Certification of Winters' Expert Witness
 
 12
 Union Texas contends that the district court improperly certified Norman Sachnik as an expert in petroleum engineering. It argues that the voir dire evidence failed to establish that Sachnik had the requisite skills for qualification under Fed.R.Evid. 702. We disagree. Sachnik had thirty-five years' experience as a consulting petroleum engineer, and his decisions as consultant routinely were acted upon by his clients. Moreover, he held eighteen patents on oilfield and oilwell equipment, with nine of those patents relating to oil and gas production. Although Sachnik admitted to being unfamiliar with certain measurement techniques pointed out by defendant's counsel, for example, gamma-ray and neutron logs, there was no suggestion that these techniques were at all germane to the formation of his expert opinions. Our review of the record persuades us that the district court did not abuse its discretion in qualifying Sachnik as an expert petroleum engineer.
 
 
 13
 C. Admission of Evidence Regarding Union Texas' Net Worth
 
 
 14
 Union Texas contests the district court's decision to admit into evidence an SEC form 10-Q for the purpose of assisting the jury in deciding the appropriate amount of punitive damages. Union Texas argues that evidence of net worth bears no reasonable relationship to actual damages and injury as required by New Mexico Uniform Jury Instruction SCRA 1986, 13-1827. This argument is meritless. New Mexico specifically allows net worth evidence as it relates to punitive damages. See Ruiz v. Southern Pac. Transp., 97 N.M. 194, 638 P.2d 406, 414 (N.M.Ct.App.1981); Ramsey v. Culpepper, 738 F.2d 1092, 1099 (10th Cir.1984).
 
 
 15
 Union Texas' reliance on Pacific Mut. Life Ins. Co. v. Haslip, 111 S.Ct. 1032 (1991), is misplaced. In clarifying that to impose punitive damages, "[t]he fact finder must be guided by more than the defendant's net worth," id. at 1045, the Court did not hold that a defendant's financial status is inadmissible for purposes of determining punitive damages. On the contrary, financial condition evidence is relevant because punitive damages must be sufficient to alter conduct for the better. See id. at 1044 (retribution and deterrence). That is the purpose of punitive damages; it is not to promote a single-shot redistribution of wealth.
 
 
 16
 Union Texas further argues that it was prejudiced by the court's decision to allow the introduction of the Form 10-Q even though the Winters did not list the form in their pretrial representations and even though the introduction of the form violated the district court's own pretrial time limits for noticing proposed evidence. We cannot say this was error. A trial court may modify a final pretrial order to prevent manifest injustice. Fed.R.Civ.P. 16(e). The district court's decision to depart in this case from its own pretrial evidentiary rulings was not an abuse of discretion.
 
 
 17
 D. Jury Instructions Regarding Duty of Care and Mitigation of Damages.
 
 
 18
 Union Texas contests the district court's refusal to give two jury instructions requested by Union Texas.
 
 
 19
 First, the court refused to instruct the jury that it must make a preliminary finding that Union Texas owed a duty of care to the Winters in order to find negligence. Such an instruction would have been improper. Duty of care is a question of law for the trial court, not for the jury. Shear v. Board of County Comm'rs, 101 N.M. 671, 687 P.2d 728, 729 (N.M.1984). The district court's negligence instructions followed the approved New Mexico model instructions.
 
 
 20
 Second, the district court refused to give an instruction which, according to Union Texas, concerned the mitigation of damages. The court gave the following general instruction: "Every person has a duty to exercise ordinary care for the safety of the person and the property of others." Union Texas sought to have the court add: "Every person also had a duty to exercise ordinary care for his own safety and the safety of his property." However, this sentence addresses the affirmative defense of lack of care by the party seeking recovery, not mitigation of damages by the injured party. Mitigation of damages is a defense imposing on the defendant the burden to show that the plaintiff reasonably could have limited his damages. See Hickey v. Griggs, 106 N.M. 27, 738 P.2d 899, 902 (N.M.1987). The district court correctly ruled that Union Texas' proposed instruction would have been inappropriate here.
 
 
 21
 Moreover, even an instruction that properly concerned mitigation of damages would have been inappropriate. Although Union Texas contends on appeal that a major portion of its case dealt with the Winters' failure to mitigate property damage, the record belies this contention. Evidence was presented from which the jury properly could conclude that Union Texas' proposed means of mitigation, for example, venting water tanks or digging a new well, would have been ineffective, and that consequently, the Winters' property damage was unavoidable. In brief, Union Texas did not carry its burden of proof.
 
 
 22
 E. Motion for Directed Verdict on Punitive Damages
 
 
 23
 Union Texas challenges the district court's finding that there was sufficient evidence to warrant a jury instruction on punitive damages. From the bench, the court stated that the evidence, and in particular Sachnik's expert opinion and the data obtained from monitor wells drilled in the vicinity of the Payne 8, showed that Union Texas "could have known that there was leakage from the well," and "that the conduct of the defendant was in careless disregard for the rights of the plaintiffs, which would warrant the issue of punitive damages under New Mexico law" (emphasis added).
 
 
 24
 Union Texas says this was error. It argues that "careless disregard" is simple negligence, and, in order to submit the punitive damages question, there must be at a minimum recklessness or gross negligence. Presumably Union Texas insists that only the words "reckless disregard" will serve the purpose. Our review is directed not at the court's particular wording in its oral ruling, but at the evidence adduced at trial. That evidence, viewed in the light most favorable to the Winters, supports a finding of recklessness or gross negligence on the part of Union Texas. Under New Mexico law, punitive damages properly may be assessed if the conduct in question is, inter alia, willful, wanton, reckless, or grossly negligent. Ruiz, 638 P.2d at 413; Dugan v. EMS Helicopters, Inc., 915 F.2d 1428, 1431 (10th Cir.1990) ("willful, wanton, or grossly negligent"). It follows that the district court's view of the evidence was not clearly erroneous. Therefore, it did not err when it denied Union Texas' motion for directed verdict on the issue of punitive damages.
 
 F. Motion for New Trial or Remittitur
 
 25
 Union Texas next contends that there was insufficient evidence for the jury to find proximate cause. The record does not support this contention. The jury properly could have found, based on the hydrological, geological, and other evidence presented, that the leakage of Payne 8 gave rise to the contamination of the Winters' well. Union Texas attempts to undermine the jury's conclusion through scattered citations to the record. We cannot reweigh the evidence. The verdict was reasonable in light of the record as a whole, and the district court did not err in refusing to grant a new trial.
 
 
 26
 The determination of the amount of damages is within the exclusive province of the jury. Sanchez v. Martinez, 99 N.M. 66, 653 P.2d 897, 903 (N.M.Ct.App.1982). The jury's award of damages in this case is supported by law. In particular, under New Mexico law, there is no requirement that only an intentional injury will support a recovery of emotional distress damages. See Whalley v. Sakura, 804 F.2d 580, 587 (10th Cir.1986). The damage award was not grossly excessive or beyond the bounds of any reasonable recovery. See Gutierrez v. Exxon Corp., 764 F.2d 399, 402 (5th Cir.1985). The trial court properly denied the motion for remittitur.
 
 G. Prejudgment Interest
 
 27
 By statute, New Mexico leaves to the discretion of the trial court the question whether to award prejudgment interest from the date of service. The statute, which is set forth in the margin, lists two nonexclusive factors for the court to consider: whether the plaintiff created unreasonable delay, and whether the defendant timely made a settlement offer. N.M.Stat.Ann. § 56-8-4(B) (Michie 1978).[1]
 
 
 28
 In its ruling declining to award prejudgment interest in the instant case, the district court expressed the view that an award of prejudgment interest is improper where the underlying damages award represents a recovery for personal and emotional injuries. The New Mexico Court of Appeals has recently held to the contrary. In Southard v. Fox, No. 12,117, 1992 WL 108122 (N.M.Ct.App. Apr. 21, 1992), the court construed the prejudgment interest statute in broad terms: "On its face, Section 56-8-4(B) applies to all actions and is not limited to certain or specific actions, such as those based on contract or in which damages are ascertainable before trial." Id. at * 2. (emphasis in original). The court went on specifically to conclude "that Section 56-8-4(B) permits the award of prejudgment interest on all damages awarded in a personal injury action, including those for nonpecuniary losses." Id. at *4.
 
 
 29
 The district court did not have the benefit of the interpretation of New Mexico law provided by Southard. Accordingly, we remand to afford the court an opportunity to determine whether, in light of Southard, an award of prejudgment interest is appropriate in this case. In making its determination, the court shall give explicit consideration to the nonexclusive statutory factors set forth in N.M.Stat.Ann. § 56-8-4(B), as well as such other factors as it may in its sound discretion deem proper.
 
 
 30
 AFFIRMED IN PART, VACATED IN PART, and REMANDED.
 
 
 
 *
 Honorable Joseph T. Sneed, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for the purposes of establishing the doctrines of law of the case, res judicata or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 In pertinent part, N.M.Stat.Ann. § 56-8-4 provides as follows:
 A. Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of fifteen percent per year
 ....
 B. The court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering among other things:
 (1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and,
 (2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.
 C. Nothing contained in this section shall affect the award of interest or the time from which interest is computed as otherwise permitted by statute or common law.