Gregory **SWAJIAN,** Plaintiff, Appellee,

v.

**GENERAL MOTORS CORPORATION,** Defendant, Appellant.

**No. 90–1031.**

United States Court of Appeals, First Circuit.

Heard May 10, 1990.

Decided Oct. 10, 1990.

Gerald C. DeMaria, with whom Robert J. Quigley, Jr., Linda E. Buffardi, and Higgins, Cavanagh and Cooney, Providence, R.I., were on brief, for defendant, appellant.

Mark S. Mandell, with whom Susan M. Carlin, and Mandell, Goodman, Famiglietti, Schwartz, Carlin & DeLuca, Ltd., Providence, R.I., were on brief for plaintiff, appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

General Motors Corporation ("GMC") appeals from a judgment for the plaintiff-ap-

pellee, Gregory Swajian, following a jury trial in the United States District Court for the District of Rhode Island. For reasons stated below, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On June 5, 1986, Maureen Swajian, wife of appellee, was driving her 1986 GMC "Jimmy" $4 \times 4$ when the vehicle began to sway, went out of control, and rolled over. Mrs. Swajian was thrown from the vehicle and subsequently died.

Below, Swajian claimed defects in the manufacture and design of the right rear axle and in the design of the manufacturing process for the axle assembly in a Jimmy vehicle manufactured by GMC. He alleged that the axle failed during normal operation thereby causing a rollover accident resulting in his wife's death. On appeal, GMC contends that there was no evidence that a feasible non-defective alternative axle design existed that would have made the axle safe under the circumstances of the subject accident. Moreover, no expert offered any testimony regarding how the alleged defects caused the rollover. GMC concludes that the vehicle rollover was caused solely by driver error as a result of Mrs. Swajian's intoxication.

The jury found GMC liable under the theories of strict product liability and negligence and awarded Swajian $449,033 for the loss to Mrs. Swajian's estate and $551,-000 for his loss of consortium. GMC appeals various legal and evidentiary rulings of the district court, most importantly its decision to exclude all evidence of Mrs. Swajian's intoxication. After a recitation of the facts, we will address each issue raised *seriatim*.

## II. FACTS

Mrs. Swajian suffered from chronic juvenile diabetes and a seizure disorder. She regularly took medications to control these conditions and had taken them on the day of the accident. Moreover, after work on the day of the accident, Mrs. Swajian consumed a number of alcoholic beverages at the Boathouse Cafe. Immediately following the accident, Mrs. Swajian was taken to the hospital, where blood samples were obtained and a blood alcohol content of 0.174 was measured. Laboratory tests conducted by the Medical Examiner's office the next day measured a result as high as 0.21. A blood alcohol level of 0.10 is presumptive evidence of intoxication in Rhode Island.

At trial, five witnesses who were on Route 95 at the time of the accident testified. One of those was Eugene Berthiaume, who testified that, before rolling over, the vehicle had been swaying and swerving for 200 to 300 yards. Berthiaume testified that the Jimmy had changed lanes, but was straightened out in too quick a manner, as if the steering had been jerked back. The vehicle then began to swerve and sway, and, before the rollover the vehicle was in a level position, and no part of it had dropped to the ground. Berthiaume was the witness furthest from the scene. Daniel Mitchell, the driver closest to the vehicle at the time of the accident, testified that the Jimmy passed him in a normal manner, and when he next saw it, it was in the process of flipping over. He could not recall whether the right rear wheel was still attached to the vehicle when he saw it flipping. He became aware of the wheel only when his passenger, Kim Gallante, cautioned him about the wheel, which was rolling across the roadway. Although called as a fact witness only, Mitchell was permitted to render an opinion with respect to whether the axle fractured before the rollover sequence began.

At trial, Swajian presented three expert witnesses. Dr. Marc Richman did a metallurgical analysis of the axle and testified that the axle failed as a result of a fatigue fracture. Dr. Richman had the inboard section of the right rear axle removed from the vehicle by Paul Rounds, one of the sons of the proprietor of the garage where the vehicle was stored. The trial court refused to permit Rounds to testify, although GMC contends that he would have contradicted Dr. Richman's testimony regarding how the axle was removed. The testimony of Dr. Robert Rose and Dr. Donald Avery

concurred with Dr. Richman's with respect to the defective design and manufacturing defect claims.

GMC called Raymond Schultz as an expert witness. Schultz testified that he videotaped demonstrations in which he intentionally cut the right axle in a vehicle similar to the subject Jimmy such that it would break during operation. Although the videotape was excluded from evidence, Schultz testified that the right rear wheel separated from the test vehicle without a rollover, and the vehicle merely slowed to a gradual stop. During cross-examination, the jury was advised that the critical element to be considered in determining whether the vehicle would have rolled over if the axle fractured, was driver input or ability to react. Although GMC moved for reconsideration of the trial court's earlier order excluding all evidence of Mrs. Swajian's intoxication, the trial judge denied the motion.

### III. EXCLUSION OF EVIDENCE RELATING TO ALCOHOL CONSUMPTION AND BLOOD ALCOHOL LEVEL

■ Swajian filed a motion *in limine* to exclude all reference to decedent's consumption of alcoholic beverages and her blood alcohol level. Firstly, he argued that the evidence of intoxication was prejudicial and inflammatory. Secondly, he argued that the theory that the accident was caused by driver error was too tenuous to support admission of the evidence. The district court granted Swajian's motion, holding that, given the "dramatic" extent of Mrs. Swajian's intoxication, under Fed. R.Evid. 403, the evidence was "unduly inflammatory and far outweighs its probative value." The trial proceeded without any mention of Mrs. Swajian's blood alcohol level.

Granting this motion denied the jury the opportunity to fairly judge this case. The district court erred in characterizing the intoxication as merely "corroborative evidence" of abnormal driving, since it is essential evidence from which the jury could infer the cause of the accident. The cause of the loss of control is the ultimate issue in the case, and, without this explanation, the jury had only Swajian's allegations of design defects to consider.

Under Fed.R.Evid. 403, courts determine whether, as a matter of law, the probative value of the relevant evidence is substantially outweighed by unfair prejudice. 22 Wright & Graham, *Federal Practice and Procedure*, §§ 5214, 5221. *See McInnis v. AMF, Inc.*, 765 F.2d 240 (1st Cir.1985). The district court *only* has discretion to exclude evidence if the probative value is "substantially outweighed by unfair prejudice." In the instant case, the district court erred as a matter of law by never fully considering the probative value of the evidence and by never making a determination that the evidence would result in "unfair prejudice." The relevant inquiry is whether the probative value is "substantially outweighed by unfair prejudice." It seems clear to us that it was not. *O'Brien v. Papa Gino's of America, Inc.*, 780 F.2d 1067, 1075 (1st Cir.1986); *Dollar v. Long Mfg. Co. N.C., Inc.*, 561 F.2d 613, 618 (5th Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978).

The trial judge made no specific finding of "unfair prejudice." It appears, from the trial judge's order, that evidence of intoxication would have been admissible if the decedent had consumed less alcohol, and thus decedent's estate profits from her misconduct only because it was so egregious. This cannot be the law. Furthermore, the trial court ignored the probative value of the evidence to GMC's case. Armed with this evidence, the jury could have concluded that driver error contributed significantly to, if not caused, decedent's accident. As it was, the jury was presented with the following factual scenario: the two month old vehicle was travelling down a straight, flat road in good weather when it swayed and went out of control for no apparent reason. The only explanation proffered was that there was a defect in one of the axles. Without the evidence of intoxication the jury was left with no reason for the loss of control other than Swajian's allegations.

The trial judge incorrectly distinguished *McInnis*, stating that Mrs. Swajian's intoxication was "much more dramatic" and would inflame the jury. In *McInnis*, a product liability action brought by a motorcycle operator against the motorcycle manufacturer, this court held that the trial judge did not abuse his discretion in permitting the defendant to introduce evidence of plaintiff's consumption of three beers. The case for admission of the evidence is far more compelling here than in *McInnis*. The plaintiff in *McInnis* had consumed three beers. Mrs. Swajian was severely intoxicated, well beyond the legal limit of 0.10. Furthermore, in *McInnis* the plaintiff alleged that the motorcycle was not crashworthy. Therefore, the question of what caused the initial accident was not at issue. In the instant case, however, the cause of the initial accident is directly in issue, and the extent of intoxication is evidence that clearly bears on the accident's cause.[1]

Evidence of intoxication is, by definition, prejudicial because that is precisely the intended function of relevant and probative evidence. Indeed, that evidence could have prompted the jury to return a verdict for GMC. This hardly renders the evidence unduly inflammatory; it simply highlights its significance.

Failure to admit this evidence constitutes clear error and therefore we reverse and remand this case for a new trial. The remainder of this opinion will discuss other issues raised by the parties which are likely to recur in a retrial of this case and should therefore be passed upon by us.

## IV. DENIAL OF GMC'S MOTION FOR DIRECTED VERDICT AND FAILURE TO INSTRUCT ON DEFECTIVE DESIGN

On appeal the parties do not agree on which of the two available theories of products liability actions was argued below.

Swajian claims that it was defective manufacture, whereby a plaintiff must show a product defect caused by a mistake or accident in the manufacturing process. GMC argues that Swajian attempted to prove defective design, whereby a plaintiff must prove that the product's design itself rendered it "unreasonably dangerous" to the consumer. *See generally Duford v. Sears, Roebuck & Co.*, 833 F.2d 407, 410–411 (1st Cir.1987). GMC argues that Swajian's manufacturing defect case fails in that the plaintiff alleged no departure from GMC's own design standards and specifications. In the alternative, argues GMC, any defective design case fails in that Swajian never proved that a reasonable practical alternative design existed.

It is our belief that the error concerning the intoxication evidence so greatly skewed the trial that determination of this issue would be speculative at best. Had the evidence of intoxication been admitted it is our feeling that the prima facie case of manufacturing or design defect would have been more clearly delineated at trial.

## V. PERMITTING A LAY WITNESS TO GIVE AN OPINION ON THE ULTIMATE ISSUE

GMC contends that it was error for the district court to permit Daniel Mitchell, a non-expert eyewitness, to give an opinion on the most contested issue in the case: whether the right rear wheel separated before the rollover began or after it was already in progress. Mitchell admitted that he never saw the wheel leave the vehicle and could not recall whether it was still on the vehicle when he saw it in the process of flipping over. GMC argues that Mitchell lacked the perception required under Fed.R.Evid. 701 and, moreover, since this perception was lacking there could be no rational connection between his observations and opinions. We agree.

Fed.R.Evid. 701 states:

1. The trial court's reliance on *Handy v. Geary*, 105 R.I. 419, 252 A.2d 435 (1969) is also misplaced. *Handy* is intended to protect the litigant whose alcohol consumption is so insignificant and so unrelated to his actions that admission of evidence of alcohol consumption would unfairly prejudice the jury against him. *Handy* clearly does not support the proposition that the more intoxicated one is, the more he should be protected from the consequences of his drinking.

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

■ For opinion testimony of a layman to be admissible three elements must be present. First, the witness must have personal knowledge of the facts from which the opinion is to be derived. Second, there must be a rational connection between the opinion and the facts upon which it is based. Third, the opinion must be helpful in understanding the testimony or determining a fact in issue. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 263, *reh'g denied*, 634 F.2d 1355 (5th Cir. 1980); *Nadler v. Baybank Merrimack Valley, N.A.*, 733 F.2d 182, 188 (1st Cir. 1984). Mitchell admitted that he did not see the wheel leave the vehicle, nor could he recall whether the wheel was still on the vehicle when he saw it flipping. Without such personal knowledge, his opinion did not even begin to meet the requirements of Rule 701. The admission of his lay opinion testimony was an abuse of discretion. *United States v. Paiva*, 892 F.2d 148, 156 (1st Cir.1989).

## VI. EXCLUDING USE OF VIDEO-TAPED DEMONSTRATIONS

■ GMC prepared various videotapes of controlled demonstrations conducted by Raymond Schultz showing what happened when the right rear axle of a Blazer fractures and the right rear wheel separates from the vehicle during normal operation. GMC argues that the tapes would have given the jury help in understanding the physical and engineering principles in effect in the subject accident, and that the district court abused its discretion by refusing to let the jury view these tapes.

The tests were done on a 1985 Chevrolet Blazer, which is the same vehicle as the Jimmy but is marketed as a Chevrolet, rather than as a GMC product. The axles on the vehicles are identical, and are manufactured at the same plant. The tapes showed that the Blazer, when travelling at the same approximate speed as the Swajian vehicle, continued after the axle separated on three wheels. The reaction was more like that which occurs with a sudden flat tire and the vehicle safely came to a stop within a short period of time.

■ If a videotaped test is insufficiently comparable to the circumstances in the case, the videotape is inadmissible. *Chase v. General Motors Corp.*, 856 F.2d 17, 20 (4th Cir.1988). In this case, the record reveals that the videotapes depicted an experienced test driver performing all the driving, and the driver knew what to expect. Moreover, the videotaped tests took place at controlled facilities, and the tests involved axles that had been rigged to fracture. As to GMC's claims that the tapes are not attempts to reenact the accident, but to show "general scientific principles," this strains credulity. GMC fails to mention even one such general scientific principle that the videotapes purport to demonstrate. Furthermore, even if they were "demonstrations," their showing to the jury is still subject to a Rule 403 analysis. *Shipp v. General Motors Corp.*, 750 F.2d 418, 427 (5th Cir.1985). The decision of whether to admit or exclude videotaped evidence is left to the sound and broad discretion of the trial judge. *Szeglia v. General Motors Corp.*, 728 F.2d 566, 567 (1st Cir.1984). Here, the trial judge acted well within his discretion in excluding the tapes.[2]

## VII. EXCLUSION OF TESTIMONY OF PAUL ROUNDS

■ Swajian's expert witness, Dr. Richman, testified that it was impossible for the inboard section to be removed from the right side of the vehicle. GMC attempted to call Paul Rounds, the person who removed the inboard section of the fractured axle, as its witness. He would have testi-

---

**2.** Moreover, the trial judge allowed GMC to offer testimony regarding the tests, and thus GMC suffered no harm by the ruling.

fied that he in fact did remove the inboard section from the right side of the vehicle. Swajian objected to this impeachment testimony on the ground that Rounds had not been specifically identified as a trial witness, even though he was well known to GMC.

 The preclusion of evidence is a sanction available for failure to comply with discovery or court order. *Smith v. Ford Motor Co.,* 626 F.2d 784, 795 (10th Cir. 1980). *Weiss v. Chrysler Motors Corp.,* 515 F.2d 449 (2d Cir.1975). The trial judge precluded Rounds from testifying for four reasons: (1) GMC knew 1½ weeks prior to calling Rounds that he might be called, yet failed to inform plaintiff's counsel, (2) GMC failed to list Rounds as a witness in pre-trial documents pursuant to court order, (3) it was unfair to notify Swajian on the day he was to rest his case that Rounds might be called, and (4) the relative insignificance of the proposed impeachment testimony "in light of the enormity of the testimony." In listing these reasons and precluding the surprise impeachment testimony of Rounds, the trial judge acted within the bounds of his discretion. In a retrial of this case, however, it may be that, if properly announced, this evidence can be properly used.

*Vacated and remanded* for a new trial in accordance with this opinion.